IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
   *Plaintiff*,

v.

TERRELL WEST,
   *Defendant*

Civil Action No. ELH-19-364

**MEMORANDUM**

This Memorandum resolves an "Appeal of Detention Order" (the "Appeal") filed by defendant Terrell West on April 3, 2020. ECF 24. He challenges the ruling of U.S. Magistrate Judge A. David Copperthite on April 2, 2020 (ECF 23), denying reconsideration of a detention order issued by him on August 16, 2019. ECF 10. The Appeal is supported by seven exhibits. ECF 24-1 to ECF 24-7. The government opposes the appeal. ECF 27. West has not replied, and the time to do so has expired.

The Appeal has been ably briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6.[1] For the reasons that follow, I shall deny the Appeal.

**I.   Procedural Background**

On July 30, 2019, a grand jury indicted Terrell West for unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). ECF 1. The maximum penalty for the offense is ten years' imprisonment.[2]

---

[1] The Bail Reform Act does not address whether a defendant is entitled to an in-court hearing on an appeal of detention. However, Judge Grimm recently addressed the issue and found "ample authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to a hearing." *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

[2] Based on a review of the Pretrial Services Report for West, which was prepared in August 2019 by Pretrial Services (ECF 31), it appears that, if convicted, West may be subject to the Armed

West initially appeared in court on August 8, 2019, and the government moved for his detention. Magistrate Judge J. Mark Coulson entered a temporary order of detention and set a detention hearing for August 16, 2019. ECF 7. At the detention hearing, Judge Copperthite found by clear and convincing evidence that no condition or combination of conditions would reasonably assure the safety of the public. ECF 10. Accordingly, Judge Copperthite ordered West's detention pending trial. Since then, West has been held at the Correctional Treatment Facility ("CTF"), located in Washington D.C.

On March 27, 2020, West moved for reconsideration of his detention, pursuant to 18 U.S.C. § 3142. He sought his release on home confinement in light of the coronavirus pandemic. ECF 19. The next day, West filed a supplemental brief (ECF 20) and submitted two exhibits. ECF 20-1 to ECF 20-2. In his supplemental briefing, West disclosed that he tested positive for the COVID-19 virus. ECF 20. West requested that he be released "immediate[ly] . . . for his own safety and for the safety of the other inmates in custody at CTF, jail staff, and the community at large." *Id.* at 1. The government filed an opposition (ECF 22) on April 1, 2020.

Judge Copperthite denied West's motion by a Memorandum and Order docketed on April 2, 2020. ECF 23. Applying the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), Judge Copperthite determined that West was "not a viable candidate for release into the community": he had prior dug-trafficking convictions; he was arrested fleeing a residence that was the subject of a search warrant and which contained controlled substances; he allegedly discarded

---

Career Criminal Act, 18 U.S.C. § 924(e)(1). Under that statute, a defendant who meets the criteria (*i.e.*, conviction under 18 U.S.C. § 922(g) and three or more prior qualifying convictions, either for "a violent felony" or "a serious drug offense") is subject to a mandatory minimum sentence of 15 years' imprisonment.

a firearm while in flight; and he had a "poor history of response to supervision in the community." *Id.* at 2.

Judge Copperthite acknowledged the gravity of the COVID-19 pandemic generally, and West's diagnosis specifically. *Id.* However, he observed that the "new circumstances of CVOID-19 are but one factor to consider" in performing the individualized assessment demanded by the Bail Reform Act. *Id.* at 3. Ultimately, "weighing the evidence presented by the government as to the response of CTF to the COVID-19 outbreak," Judge Copperthite determined "that releasing Defendant to home detention with Pretrial Supervision does not ensure the safety of the public" because pretrial services "is without the means to monitor persons on home detention in any way that would ensure the safety of the community." *Id.* at 2-3.

Judge Copperthite also disagreed with West's contention that his COVID-19 diagnosis counseled in favor of his release. He observed that West "is properly isolated and is under the medical supervision of CTF medical staff." *Id.* at 3. In contrast, he found that "there is no specific plan offered by Defendant in the event he were to be released into the community and become ill." *Id.* at 4. Judge Copperthite explained: "What the Defendant is asking is for the Court to take a person who has tested positive for CVOID out of isolation and place him into the community with no further information." *Id.*

This Appeal followed on April 3, 2020. ECF 24.

## II. Standard of Review

The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq.*, governs the release or detention of a defendant pending trial.

As is relevant here, the government may move for a defendant's pretrial detention if the case involves the alleged possession of a firearm. *Id.* § 3142(f)(1)(E). If, the court determines,

3

following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See United States v. Salerno*, 481 U.S. 739, 754-55 (1987). But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, but the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742. Rather, the Act directs the court to "take into account the available information concerning" four factors. 18 U.S.C. § 3142(g). Those factors include, *id.*:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Further, the Act provides that a defendant "ordered detained by a magistrate judge . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion shall be determined promptly." *Id.* § 3145(b). Of import here, the district court reviews the magistrate judge detention order *de novo*, "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart*, 19 F. App'x at 48; s*ee also United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992); *United States v. Clark*, 865 F.2d 1433, 1436 (4th Cir. 1989). In undertaking this examination, the court "'is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'" *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009)).

### III. Discussion

West moves for reconsideration of his detention under § 3142(g). ECF 24 at 5-20.[3] Assessing the nature of the charges against West, the weight of the evidence, and West's criminal history, I am satisfied that West poses a danger to the community if released. Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial. Notwithstanding West's positive test for the coronavirus, continued detention is warranted.

Defendant is charged with illegal possession of a firearm under 18 U.S.C. § 922(g)(1). This is a serious offense. As the government acknowledges, the defendant does not have a history

---

[3] West does not invoke 18 U.S.C. § 3142(j), which permits a court to temporarily release a person pending trial if a "compelling reason" exists to do so.

5

of violence. ECF 27 at 6. But, a firearm is itself "a tool" of violence. *Id.* This is a truism that Baltimore knows all too well. *See* Tim Prudente, *2019 Closes With 348 Homicides in Baltimore, Second-Deadliest Year on Record*, BALT. SUN (Jan. 1, 2020 6:35 p.m.), https://bit.ly/2UYzhb0. Indeed, as Judge Copperthite observed, even in the midst of a global pandemic that has brought daily life largely to a halt, Baltimore continues to be racked by gun violence. *See also* Justin Fenton, *Baltimore Crime During Coronavirus: Property Crime Plummets, Gun Violence Continues*, BALT. SUN (Apr. 4, 2020 5:00 a.m.), https://bit.ly/3e8WT43. Firearms are often used to further drug trafficking activities. *See United States v. Manigan*, 592 F.3d 621, 629-30 (4th Cir. 2010); *United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002).

The circumstances of West's arrest underscore the seriousness of the charge. According to the government, Baltimore City Police Department officers apprehended West on March 28, 2019, during the execution of a search warrant at a residence. ECF 27 at 6. The warrant was based, in part, on information from a confidential source concerning drug trafficking at the residence, where controlled purchases had been made. *Id.* And, controlled substances were recovered there at the time of the search. *Id.* at 7.

Further, the government alleges that when officers approached the residence, West jumped from the porch and sprinted down an alley. A pursuit ensued, during which West allegedly jettisoned his gun. The government proffers that a body worn camera from one of the officers captured a sound during the chase, consistent with metal crashing against a hard surface. *Id.* at 6. About seven minutes after West was arrested, the officers located a loaded Glock pistol on his "flight path." *Id.* at 7, 8. The gun, which had been reported stolen in 2013, contained West's DNA, along with that of two others. *Id.* at 7.

West disputes that this is an open-and-shut case. ECF 24. He maintains that the body camera footage does not reveal that the officers were "close behind or within sight" of West at the time of the chase, and he also indicates that the noise cannot readily be ascribed to a firearm hitting a hard surface. *Id.* at 6-7. Further, West points out that another individual fled the house, suggesting that the firearm could belong to that person instead. *Id.* And, he opines that the government's DNA evidence is subject to attack and "is more complex than it sounds." *Id.* at 7.

Defendant's arguments are not frivolous. Ultimately, they may cast sufficient doubt on the evidence, and might lead to an acquittal. But, that determination is to be made by the finder of fact at trial. At this juncture, the weight of the evidence against West is strong and counsels against his release.

West's history and characteristics also illustrate that he presents a serious risk to public safety. To be sure, as defense counsel underscores, West, who is 43 years old, has no history of violence. But, West has an extensive criminal history; he has more than a half dozen controlled substance convictions in Maryland, spanning 1995 to 2017. The convictions include a 2005 conviction for possession with intent to distribute; a distribution conviction in 2006; a conviction in 2007 for possession with intent to distribute; a conviction in 2011 for possession with intent to distribute; and convictions in 2013 and 2017 for attempted distribution. And, as recounted in the Pretrial Services Report, West was regularly using alcohol, cocaine, molly, and marijuana at the time of his arrest. Further, as Judge Copperthite observed, West has demonstrated a poor track record with community supervision, having violated the terms of his State probation on several occasions. In short, West's past conduct does not favor release.

Of particular salience here, West has tested positive for COVID-19. *See* ECF 20 at 1. The virus is highly contagious; it spreads "easily and sustainably" from person-to-person. *See*

7

*Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Asymptomatic carriers can spread COVID-19, and scientists estimate that the average infected person transmits the disease to between two and four others. *See* Jenny Gross & Mariel Padilla, *From Flattening the Curve to Pandemic: A Coronavirus Glossary*, N.Y. TIMES (Mar. 18, 2020), https://nyti.ms/3aW4yAI. The disease has claimed thousands of lives in the United States to date. *See Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CTR. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/2y6wfIq (last visited Apr. 10, 2020). In short, any person infected with COVID-19 poses an acute threat to society.

Removing West from isolation and placing him in home confinement may actually facilitate the spread of the virus. If West were released, this would risk transmittal of the virus to the CTF staff involved in his transfer, his third-party custodian, and anyone who visits him while he convalesces. Notably, West's proposed third-party custodian, his aunt, is 63 years of age and is therefore at heightened risk of falling serious ill were she to become infected. *See Coronavirus Disease 2019 (COVID-19), Older Adults*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/34nhPQv (noting that adults over 65 have accounted for 8 out of every 10 coronavirus-related deaths reported in the United States). And, were West to disregard the Court's order of home confinement, he could unwittingly spread the virus to complete strangers. Because of West's present condition, his release might actually pose a distinct and significant risk to the community.

In addition, if West were released, the usual tools of supervision are not readily available, as they have been adversely affected by the COVID-19 outbreak. U.S. Probation and Pretrial Services has recently advised that it is no longer providing new electronic monitoring services.

Other methods of supervision would be insufficient, because they do not immediately alert if a defendant is noncompliant. See ECF 27 at 12.

The parties paint very different pictures of conditions and safety measures at CTF. But, as the government observes, there is no evidence that Mr. West has received inappropriate medical care while detained. ECF 27 at 2. West is presently receiving treatment at CTF, in isolation with other detainees who have COVID-19. ECF 20 at 1. Unfortunately, West's lawyer has not been able to talk to the defendant by phone. ECF 24 at 9. But, defense counsel has represented that he conferred with a member of the medical unit at CTF, and that person advised that West initially had a fever, the fever has since subsided, and West is not experiencing any severe symptoms, such as difficulty with breathing. *Id.* at 10. It appears that West's health condition is improving. In that context, defense counsel's criticism of the quality of medical care at CTF carries less weight.

Nevertheless, like other judges in this district, I recognize the serious threat to health posed by the COVID-19 pandemic, the worst health crisis that the world has experienced since 1918. *See United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020). And, I acknowledge that correctional facilities are ill-suited to prevent outbreaks and mitigate their spread. *See United States v. Davis*, ELH-20-09, 2020 WL 1529158, at *5 (D. Md. Mar. 30, 2020). Social distancing—the only presently effective measure to reduce the risk of infection—is indeed exceedingly difficult for people confined in detention centers. Moreover, one who is ill would understandably prefer the comforts of home, rather than the confines of a penal facility.

All that said, the D.C. Department of Corrections ("DOC"), which oversees CTF, has implemented substantial measures to protect detainees from COVID-19 and to treat those who are

infected.  *See* D.C. Dep't of Corrs., *DC Department of Corrections' COVID-19 Response FAQs*, DC.GOV, https://bit.ly/2y6xEyG (last accessed Apr. 10, 2020) ("DOC COVID-19 Policy"); *see also United States v. Sturmer*, GJH-18-468, 2020 WL 1676313, at *3 (D. Md. Apr. 6, 2020) (accepting government's proffers that DOC is implementing "comprehensive" measures to monitor and treat detainees); ECF 27 at 15, 16.  For instance, DOC has suspended nearly all in-person visits, programming, and volunteer activities, and has enhanced cleaning efforts, especially in common areas.  Daily activities, such as recreation and showering,  have been modified to facilitate social distancing.  And, detainees who exhibit the symptoms of COVID-19 are quarantined and provided access to medical care.  *See* DOC COVID-19 Policy.

In West's Appeal, he references various news articles and press releases, which he submitted as exhibits, to argue that DOC's efforts "fall far short of preventative measures recommended by the Centers for Disease Control." ECF 24 at 10.  In his view, these reports prove that DOC is "woefully unprepared for the crisis that has landed at its doorstep." *Id.* at 14.  West's arguments are unavailing.  This is a rapidly evolving situation, and new information concerning the virus emerges at break-neck pace.  DOC has repeatedly revised its procedures, most recently on April 4, 2020.  Moreover, as Judge Hazel of this Court has observed, "COVID-19 is not a virus that has specifically attacked the D.C. Jail"—it is a "global pandemic that all citizens of the world are struggling to combat." *Gray*, 2020 WL 1554392, at *2.

Finally, West's Sixth Amendment concerns do not alter my calculus.  It appears likely that the policies CTF has implemented for the safety of staff and detainees will, in the short term, make it more difficult for detained defendants to communicate with counsel.  In-person visitation has been understandably curtailed.  And, according to West's counsel, CTF is no longer arranging legal calls, although the government disputes that contention.  ECF 24 at 18; *but see* ECF 27 at 20.

Even so, talking over the phone is a poor substitute for meeting face-to-face. *See Davis*, 2020 WL 1529158, at *7. Recognizing these concerns, some courts have released defendants from custody, reasoning that the current public health crisis renders it impossible to mount an effective defense from jail. *See id.* at *7-8; *see*, *e.g.*, *United States v. Stephens*, __ F.3d __, 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020).

But, any strain imposed on the attorney-client relationship due to the coronavirus does not warrant release. The Court has canceled all non-emergency proceedings through June 5, 2020. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19,* Case 1:00-mc-00308, Standing Order 2020-05 (D. Md. Apr. 10, 2020). Therefore, any difficulty experienced by West in communicating with his lawyer will not delay his case. Rather, any delay is due to the pandemic itself. Once the Court is fully operational, however, West and his attorney will be afforded adequate opportunities to confer, to review discovery, and to prepare a defense. *See United States v. Bilbrough*, TDC-20-0033, 2020 WL 1694362, at *4 (D. Md. Apr. 7, 2020). Thus, the Sixth Amendment does not compel West's release.

## IV. Conclusion

For the reasons stated above, I shall affirm Judge Copperthite's Order (ECF 23), and deny West's Appeal (ECF 24). An Order follows, consistent with this Memorandum.


Date: April 10, 2020                              /s/
                                        Ellen Lipton Hollander
                                        United States District Judge

11